**Robert L. WIGGINS, Sr., Plaintiff,**

v.

**Bill ROBERTS, et al., Defendants.**

**Civ. A. No. 75-AR-1760-M.**

United States District Court,
N.D. Alabama, M.D.

Oct. 20, 1982.
On Motion to Amend Nov. 17, 1982.

pending motions.

Robert L. Wiggins, Jr., Wiggins & Quinn, Birmingham, Ala., for plaintiff.

Robert Hanson, Albertville, Ala., for Bill Roberts & Robert Hanson.

Randy Beard, Beard & Beard, Guntersville, Ala., for Jean C. Albert & Rex Smalley.

## MEMORANDUM OPINION

ACKER, District Judge.

This cause came on to be heard on plaintiff's motion to fix attorney's fees and to tax the fees against defendants.

The case was decided on its merits on July 6, 1981, by a declaration that §§ 6-6-43 and 6-6-44, Code of Alabama (1975), as applied to Alabama residents such as plaintiff, are unconstitutional. That final decree stated nothing about attorney's fees. All of plaintiff's other prayers for relief were denied.

Plaintiff's suit, pursuant to 42 U.S.C. § 1983, claimed a deprivation of his civil rights arising out of a writ of attachment issued out of the Marshall County Circuit Court, resulting in a levy on plaintiff's personal property without prior notice to him in violation of "due process" requirements. The defendants are all those persons and entities who were involved in the invocation of the offending Alabama pre-judgment attachment statutes.

It was not until six months later, on January 6, 1982, that plaintiff sought a fixing and a taxing of his attorney's fees.

Defendant Hanson now challenges the assessment of fees against him on the ground that he was acting only in his capacity as attorney for an Alabama plaintiff who sought attachment in aid of his pending suit, and therefore, that he was not acting "under color of State law". He cites several cases for this proposition and asks that he now be dismissed from the law suit under Rule 12(h)(3), F.R.C.P. While Rule 12(h)(3) does allow a dismissal at any time when it appears that the Court lacks subject matter jurisdiction, it is not available after a final decree from which no appeal has been taken within the time for appeal. Rule 12(h)(3) does not contemplate a post-judgment dismissal. Hanson's earlier motion to dismiss was overruled, and the final decree binds him on the question of jurisdiction as well as on the merits. Therefore, however persuasive Hanson's new argument may be it comes too late, and his belated motion to dismiss is due to be denied.

■ Defendants Smalley and Albert defend plaintiff's claim for attorney's fees on the ground that Smalley, as Sheriff, and Albert, as Clerk, were simply performing routine administrative tasks in accordance with a long established statutory procedure and practice and are guilty of no intentional act directed toward plaintiff, and that the constitutional questions could just as easily have been resolved some other place and time and with other parties. In passing, the Court notes that defendant Albert issued this particular attachment on an insufficient affidavit (§ 6–6–44, Code of Alabama [1975]) and an insufficient bond (§ 6–6–45, Code of Alabama [1975]), even under the then existing Alabama law. However, conceding for the sake of the argument that these officer-defendants are "innocent", the Court is bound by *International Oceanic Enterprises, Inc. v. William Menton,* 614 F.2d 502, 503 (5th Cir.1980), in which the Fifth Circuit said in dealing with a claim for attorney's fees in a civil rights case:

> The arguments that appellees are "mere functionaries" also fails. Since appellees were sued in their official capacities, any award of attorneys' fees will be paid by the city. *Hutto v. Finney,* supra, 437 U.S. [678] at 693–94, 98 S.Ct. [2565] at 2575, 57 L.Ed.2d [522] at 536; *McNamara v. Moody,* 606 F.2d 621, 626 (5th Cir.1979). Nor does appellees' good faith in carrying out their official duties render an award unjust. *Johnson v. Mississippi,* supra [5th Cir.] 606 F.2d [635] at 637; *Morrow v. Dillard,* supra [5th Cir.] 580 F.2d [1284] at 1298; *Brown v. Culpepper,* 559 F.2d 274, 278 (5th Cir.1977). (614 F.2d 503)

Defendant Roberts has died pending suit and there has been no revivor. Plaintiff's motion as to Roberts is therefore moot. Defendants McLendon and Marshall County Commission have never filed an appearance, did not resist the original complaint, and have not defended the motion for attorney's fees. They apparently confess the motion for fees.

■ Under the rationale of *International Oceanic Enterprises,* supra, the Marshall County Commission has the ultimate responsibility for paying whatever attorney's fees are awarded by the Court, that is, unless the Commission is able to pass on the obligation to the State of Alabama on the basis it was an Alabama statute, and not a law peculiar to Marshall County, which was successfully attacked by plaintiff.

It has been held that in the absence of a local rule setting a time limitation on an application for attorney's fees in civil rights cases, the trial court's discretion was not abused in allowing such an application 4½ months after a final decree where there was no surprise or prejudice to defendants by the late application. *White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). There is no local rule by the United States District Court for the Northern District of Alabama on the time for filing an attorney's fee claim, and defendants here not only did not raise the issue but showed no surprise or prejudice.

■ The Court is left with the question of fixing a fair and reasonable attorney's fee for plaintiff's attorney who is an accomplished practitioner and who spent many hours in the case. First, the claimed expenses in the amount of $144.87 are more than reasonable. Secondly, considering all of the relevant criteria outlined in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), the Court finds that a reasonable fee in this case, including the said expense reimbursement of $144.87, is $5,000.00, which is hereby taxed against defendants as part of the costs. In making this determination the Court in mindful of the fact that plaintiff's attorney is plaintiff's son and therefore the lawyer is not as burdened as usual in handling an unpopular cause.

An appropriate order will be entered separately.

### ORDER

#### On Motion To Amend

Plaintiff has moved to amend the judgment of October 21, 1982, which fixed and

taxed a $5,000 attorney's fee for plaintiff, pursuant to 42 U.S.C. § 1988. The Court has read plaintiff's brief on motion for reconsideration and has given the question careful reconsideration in the knowledge that the Fifth Circuit was not only furnishing guidelines for the fixing of attorney's fees in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), but was recognizing the obvious when it said at 488 F.2d 720:

> We are mindful of the difficult job of the trial judge in cases of this kind, and that in all probability his decision will be totally satisfactory to no one.

In its memorandum opinion of October 21, 1982, this Court did not intend to indicate any lack of recognition of the twelve distinct factors outlined in *Johnson* for determining the appropriate fees to be awarded under § 1988. The Court endeavored to apply fairly those very factors. The application of those factors led the Court to the fee which was, in fact, fixed. The Court does not believe that *Johnson,* nor any subsequent decision, requires that a trial judge conduct an extensive analysis of each separate *Johnson* factor in every § 1983 case, and to spend many pages comparing, weighing and sifting those factors and each of them, separately and severally. It is enough, or should be enough, that all of the factors be fairly considered. Put another way, there is nothing in *Johnson* which requires that a determination be made as to which specific *Johnson* factors apply, how they apply, and in what degree they apply. Hypothetically, if five of the twelve factors arguably have negative effects on the amount of fee in a particular case and seven of the factors have a positive effect, this should not result in a fee in the amount of 7/12 of the fee requested. There must be an area of *judgment* by the trial judge on these matters. Using the words from *King v. McCord,* 621 F.2d 205, 206 (5th Cir.1981), quoted by plaintiff in his motion for reconsideration, this Court assures plaintiff that its award was not based on "arbitrary and conclusory predispositions". If the Court had had such predispositions it would not have awarded such a substantial fee.

Although it perhaps is unnecessary to respond further to plaintiff's motion, because the motion is undoubtedly sincere, the Court will elaborate its reasoning.

### THE "PLUS" FACTORS

The following *Johnson* factors all, in varying degrees, argue for the fee of $7,387.50 requested by plaintiff:

(1) *The time and labor required.*

(3) *The skill requisite to perform the legal services properly.*

(5) *The customary fee.*

(7) *Time limitations imposed by the client of the circumstances.*

(9) *The experience, reputation and ability of the attorneys.*

While each of these five factors is not equally persuasive, or equally important, all have been considered by the Court as supporting plaintiff's fee claim because the facts invoke each of them.

(6) *Whether the fee is fixed or contingent.*

Although plaintiff alleges the existence of a contingency fee contract, the agreement was not offered in evidence. It is therefore impossible for the Court to know the actual terms of the contract, such as whether or not it consists of a percentage of the monetary damages recovered, or whether it depends on the award of a fee under § 1988 against defendant as the only source of compensation for the attorney. It has very recently been held by the Tenth Circuit in *Cooper v. Singer,* 689 F.2d 929 (1982) that the existence of a contingent fee arrangement may require that the plaintiff's attorney content himself with the contracted percentage of whatever amount is recovered, which in this case would be zero if such a contingent fee arrangement existed. Even though the terms of the alleged contingent fee arrangement are unknown to the Court, the Court has nevertheless been willing to assume it as a "plus" factor in fixing the fee.

### THE "MIXED" FACTORS

The following *Johnson* factors are a "mixed bag" and cut two ways:

(4) *The preclusion to other employment by the attorneys due to acceptance of the case.*

It is difficult from the evidence presented to determine what effect, if any, should be given to the preclusion of other employment by the attorney due to the acceptance of the case. It is, of course, always true that while an attorney is spending time on one case, he is not spending the same time on another case. To this extent, plaintiff's attorney was precluded, but the Court is not convinced that the preclusion here has substantial significance either as an enhancing factor or as a negative factor.

(12) *Awards in similar cases.*

As noted in his brief on motion for reconsideration, plaintiff's attorney has recently been awarded $75 per hour in two cases and $60 per hour in another by other Judges of this Court. While § 1988 fees should not be awarded strictly by reference to an hourly rate, if this Court should use as a guide these recent fee awards, they would not be too helpful because they are not uniform. Furthermore, the current hourly rate may not be appropriate for legal services in a case which began in 1975, before inflation took its upward spiral in attorneys fees, and yes, even judicial salaries.

### THE "MINUS" FACTORS

The following *Johnson* factors all, in varying degrees, seem to mitigate, and to act in reduction of the fee requested:

(2) *Novelty and difficulty of the question.*

Hon. Frank H. McFadden, the trial judge who wrote the opinion on the merits in this case, found very little, if any, novelty or difficulty in the constitutional question presented. He indicated his belief that the question was "*insubstantial . . . because prior decisions of the Supreme Court necessarily make the question one without controversy and foreclose the subject*". (emphasis supplied). Memorandum Opinion of August 31, 1978, p. 7. He further found that the question was "not unsettled". In explanation he discussed the cases of *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1976); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and concluded that Di-Chem "clearly mandates that the statutory scheme in question here is unconstitutional," and that "it is so *clearly* unconstitutional that no three-judge court is required". (emphasis supplied). Memorandum Opinion of August 31, 1978, p. 7.

(8) *The amount involved and the results obtained.*

While the decision's effect on the law of Alabama may be substantial, plaintiff was denied a large portion of his requested relief. Plaintiff requested the empaneling of a three judge panel. He did not prevail. Plaintiff requested certification of a plaintiff class. He did not prevail. Plaintiff requested certification of a defendant class. He did not prevail. Plaintiff requested that §§ 6–6–40 through 6–6–46, Code of Alabama, 1940 (seven sections), be held unconstitutional. Only §§ 6–6–43 and 6–6–44 (two sections) were declared unconstitutional. He therefore did not prevail as to five sections. Plaintiff requested that the pre-attachment statutes be held unconstitutional as to all property owners subject to attachment, resident and non-resident. He only prevailed as §§ 6–6–43 and 6–6–44 apply to residents of Alabama. Plaintiff at first requested $10,000 in damages, later amended to $25,000. He did not prevail and received no monetary award whatsoever.

While the Judge writing this opinion is not bound by the prior rulings of Judge McFadden except in this case, the Court notes with interest the memorandum opinion of Judge McFadden in *Aileen J. Taylor v. Goodyear Tire & Rubber Co.,* CV 69–211, entered on June 12, 1973 (admittedly under Title VII and prior to § 1988), wherein Judge McFadden, considering a fee application under 42 U.S.C. § 2000e–5(k) said at p. 3.

The Court is of the opinion that plaintiffs and intervenors are entitled to a fee for

their successful efforts in adjusting seniority rights and in recovering the sick pay differential and that their efforts on job classifications and back pay efforts which were unsuccessful cannot be rewarded by the Court. The statute provides for fees to the prevailing party and with respect to these issues plaintiffs did not prevail.

While Judge McFadden's opinion of June 12, 1973, is not itself binding, it correctly anticipated the Fifth Circuit and the Eleventh Circuit after § 1988 came into being. Perhaps the leading case which echoes Judge McFadden's reasoning is *Familias Unidas v. Briscoe,* 619 F.2d 391, 406, (5th Cir.1980), where the Fifth Circuit said:

> The amount of attorneys fees awarded plaintiff however should be based only upon the work performed on the issues on which they were successful. *Nadeau v. Helgemoe,* 581 F.2d 275, 278 (1st Cir. 1978).

Similar expressions are contained in *Miller v. Carson,* 628 F.2d 346, 349 (5th Cir.1980); *Robinson v. Kimbrough,* 652 F.2d 458, 466 (5th Cir.1981); *Wilson v. Taylor,* 658 F.2d 1021, 1035 (5th Cir.1981); and *Thomas v. Board of Trustees,* 515 F.Supp. 280, 294 (S.D.Tex.1981). In his application for fees and supporting affidavits plaintiff did not differentiate between the lawyer-time spent on those issues on which he prevailed and the lawyer-time which was spent on those issues on which he did not prevail. Suffice it to say that it is apparent from the record that a large percentage of the lawyer-time here was spent on issues which met with no success.

(10) *The undesirability of the case.*

Because of the nature of the instant cause, the Court does not find that it was "unpopular" or "undesirable". Plaintiff has made no record to demonstrate undesirability. In fact, it may have been one of the more popular § 1983 cases in Alabama while it was pending. It seems to the Court that the "undesirability" of civil rights cases because "civil rights attorneys face hardships in their communities" (488 F.2d 719) is not now what it was in 1974 when *Johnson* was

decided, particularly in cases where there is no racial issue. Any possible "undesirability" here was substantially mitigated by the father-son relationship which existed between plaintiff and his attorney.

(11) *The nature and length of the professional relationship with the client.*

Here the client is the attorney's father. It would be unusual for a lawyer-son to charge his father on the same basis upon which he charges other clients, even if there were a long-term professional relationship between the two, as to which there is no evidence here. Although the purely ministerial acts of a court clerk or a sheriff, with no wrongful intent whatsoever, triggers an attorneys fee obligation under § 1988 where a constitutional violation occurs, it would seem that such an actor should enjoy some benefit from the close relationship of the plaintiff to his lawyer.

## CONCLUSION

The Court has not here discussed the *Johnson* factors separately in order to give any one of them undue emphasis, but only because each of them was considered prior to the judgment of October 21, 1982, and each has now been fully reconsidered. Upon reconsideration and reflection the Court might have been too generous in its award, but on balance the Court reaches the same conclusion all over again.

Plaintiff's argument boils down to a contention that if the total number of lawyer-hours alleged to have been spent in a § 1983 case were actually spent, *and* if they were reasonably spent, *and* if the suggested hourly rate is reasonable, then the lawyer who has performed the services can never receive a fee less than the number of lawyer-hours multiplied by the hourly rate. If this is the law, it has not yet been recognized or articulated by the Fifth Circuit, or by the Eleventh Circuit, or by any other federal court. Such a rationale flies in the face of *Johnson.*

For the reasons originally stated and here stated in more detail, plaintiff's motion to alter or amend the judgment of October 21, 1982, is due to be denied, and it is hereby DENIED.